```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

_____
                              )
DARKENS BONNETT,              )
                              )
               Petitioner,    )
                              )
          v.                  )          CIVIL ACTION
                              )          NO.20-cv-11563-WGY
SUZANNE THIBAULT              )
                              )
                              )
               Respondent.    )
_____)
```

YOUNG, D.J.                                      September 26, 2023

**MEMORANDUM AND ORDER**

**PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C § 2254**

**I.   INTRODUCTION**

This petition arises from the shooting of Vincent Gaskins ("Gaskins") on November 22, 2009, outside a nightclub in Lynn, Massachusetts. Mem. Supp. Writ of Habeas Corpus ("Writ"), ECF No. 2 at 4. The shooting caused Gaskins to perish two days later. Id. at 5. The petitioner in this case, Darkens Bonnett ("Bonnett"), was tried and convicted of first-degree murder by a jury in the Superior Court of Massachusetts sitting in and for the County of Essex. Id. at 2. Bonnett now brings this petition for a writ of habeas corpus, claiming he was barred by the state court from presenting a proper defense under Supreme

[1]

Court precedent.  Id. at 1-2; See Washington v. Texas, 388 U.S. 14, 18 (1967); Chambers v. Mississippi, 410 U.S. 284, 295 (1973).

**A. Procedural History**

Bonnett was convicted of the first-degree murder of Gaskins on January 27th, 2012.  Writ, ECF No. 2 at 2.  Prior to that trial, on January 12th, 2012, Bonnett's defense counsel received a heavily redacted report from the Federal Bureau of Investigation ("FBI").  Id. at 13.  The report detailed an interview with an unidentified individual described as someone "in a position to testify."  Id.  In the interview the individual claimed a separate person, named Brendan Payne, had "shot and killed Gaskins."  Id.  Defense counsel filed a motion for discovery, and the Court ordered the Commonwealth of Massachusetts ("Commonwealth") to identify the individual interviewed in the report.  Id. at 14.  After conferring with the FBI, however, the prosecution explained that the individual's identity was not authorized for disclosure.  Id.  The Court ruled that, as a separate sovereign, the United States could withhold the individual's identity, and separately ruled that defense counsel could not seek testimony about the unidentified individual.  Id. at 15-16.

On January 14th, 2014, Bonnett moved for a new trial due to ineffective assistance of counsel, and on January 24th, 2014,

[2]

the Massachusetts Supreme Judicial Court ("SJC") remanded the motion for a new trial to the Superior Court. Id. at 2. After a hearing, on July 17th, 2014, the Superior Court denied Bonnett's motion, which he timely appealed. Id. at 3. In that appeal, Bonnett also consolidated a separate appeal arguing for disclosure of the unidentified individual's identity. Id. The SJC rejected Bonnett's claim of ineffective assistance of counsel but remanded to the Superior Court the defendant's motion for disclosure, ruling that the original trial judge's exclusion of the informant violated Roviaro v. United States, 353 U.S. 53 (1957). Id. at 29.

On remand, the Superior Court heard testimony from the previously unidentified individual, as well as two other new witnesses, claiming that Brendan Payne had admitted to them he was guilty of Gaskins' murder. Id. at 4, 20-22. The Court denied Bonnett's motion for a new trial and made detailed factual findings regarding its reasons for strongly discrediting the witnesses' testimony. Id. at 4, 38-40. On appeal, the SJC affirmed, finding no abuse of discretion by the Superior Court. The SJC explained that the witnesses' testimony was "neither credible nor material, and did not cast real doubt on the justice of the defendant's conviction." Commonwealth v. Darkens Bonnett, 482 Mass. 838, 848 (Lenk, J.) (2019) ("Bonnett II"). This petition followed.

**B. Factual Background**

On November 22, 2009, at approximately 1:15am, Vincent Gaskins was shot and killed outside of Soriano's nightclub in Lynn, MA. Writ, ECF No. 2 at 4. Surveillance video footage of the incident was unclear and did not clearly depict the shooter. Id. at 5. Police recovered a firearm around the corner from the scene, which had a palm print consistent with that of the petitioner in this case, Darkens Bonnett ("Bonnett"). Id. The only witnesses for the Commonwealth at trial were the cousin of the victim, Sheffery Johnson ("Johnson"), who was present at the scene of the murder, Joseph Burns, a drug addict who had previously traded weapons for cocaine with Bonnett, and Thomas Arrington, the defendant's roommate. Bonnett II, 482 Mass. at 840-41.

The night of the murder, Johnson was in her car with her boyfriend, Brendan Payne ("Pyane"), in the parking lot of Soriano's. Writ, ECF No. 2 at 6. While in the parking lot, Johnson saw Gaskins leaving Soriano's with his girlfriend Ashley and called him over. Id. Payne and Gaskins got into a verbal altercation and discussed fighting one another. Id. at 7. The shooting occurred during this time. Id. Johnson did not see who fired the shot at Gaskins. Id. Johnson claimed, however,

that she saw Bonnett standing over Gaskins' body, tucking a gun into his pants following the shooting.[1]  Id. at 8.

The Commonwealth also offered testimony from Joseph Burns ("Burns"), who claimed that Bonnett not only told him about the altercation with Gaskins, but also stated that he had shot Gaskins in the face.[2]  Id. at 12.  Thomas Arrington ("Arrington"), Bonnett's roommate, also testified that he had seen Bonnett at various times with several guns, though not with a .22 caliber (which was used in the murder of Gaskins). Commonwealth v. Darkens Bonnett, 472 Mass. 827, 830 n.4 (Lenk, J.) (2015) ("Bonnett I").  Arrington also testified that when he asked Bonnett whether he was involved in Gaskins' shooting, he simply shrugged.  Id.

In November of 2012, prior to Bonnett's trial, defense counsel received a report ("The Bizzell Report") from the FBI regarding an anonymous individual (now known to be Victor

---

[1] In her grand jury testimony, with which she was impeached on cross-examination, Sheffery Johnson stated that she saw the defendant put "something" in his pants, and that she could not see that object.  A police officer testified that, in an interview some hours after the shooting, Johnson stated repeatedly that she had not seen a gun. See Bonnett II, 482 Mass. at 840 n.4.

[2] Burns was in Federal prison at the time of trial, and he acknowledged that he was cooperating with the authorities in the hope of earning a lighter sentence. See Bonnett II, 482 Mass. at 840 n.5.

Bizzell).  Writ, ECF No. 2, at 13.  The individual ("Bizzell") claimed that Payne, not Bonnett, shot Gaskins and thereafter provided the pistol to Bonnett.  Id. at 13-14.  At that time, however, the FBI refused to authorize the disclosure of the witness's identity, and so counsel was unable to determine the identity of the witness.  Id. at 14.  Despite efforts by the Court to get the information, the Court eventually allowed the case to move forward without the information since a separate sovereign (The United States) was withholding it.  Id. at 15-16.  Attempts by counsel to examine the police involved were also denied.  Id.  The Massachusetts Supreme Judicial Court remanded the case following an appeal due to the exculpatory nature of the withheld evidence.  Id. at 17.

An unredacted version of the report was given, however, to a defendant in another case.  Id. at 18.  The report detailed the state of mind of Payne following Gaskins' murder and claimed that Payne took credit for it.  Id. at 18-19.  The report further stated that Payne had threatened to kill anyone that talked to the police regarding the murder.  Id. at 19.

Two other witnesses, Robert Brown ("Brown") and Bernard Edwards ("Edwards"), also came forward with exculpatory evidence.  Id. at 19-21.  Brown, a family friend of Payne, claims Payne previously told him that he had killed Gaskins and was sending Bonnett money for going to jail for the murder.  Id.

at 20. Separately, Edwards claims that Payne had been upset about the incident, and that on three separate occasions Payne brought up that he had killed Gaskins and that Bonnett was serving time in prison for it. Id. at 21-22.

I. ANALYSIS

A. Legal Standard

A federal court's grant of a habeas relief is limited by the provisions of 28 U.S.C. § 2254(d). "[O]n federal habeas review, the level of deference owed to a state court decision hinges on whether the state court ever adjudicated the relevant claim [for habeas relief] on the merits or not." Clements v. Clarke, 592 F.3d 45, 52 (1st Cir.2010). If the claim was adjudicated on the merits, this Court can only grant the writ of habeas corpus if the state court adjudication resulted in: (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1, 2).

"[A]n 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." White v. Woodall, 572 U.S. 415, 419, (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166,

155 L.Ed.2d 144 (2003).  "[T]he state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." Foxworth v. St. Amand, 570 F.3d 414, 425 (1st Cir. 2009), certified question answered, 457 Mass. 200, (2010).  "The error must be shown to have 'had a substantial and injurious effect or influence in determining the jury's verdict.'" Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 631, (1993)).  "A state court's factual findings 'shall be presumed to be correct,' and the petitioner bears 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Webster v. Gray, 39 F.4th 27, 33 (1st Cir. 2022) (citing U.S.C. § 2254(e)(1).

**B. Bonnett's Motion for a New Trial**

Here, Bonnett argues that the exclusion of the testimony of Bizzell, Edwards, and Brown violates his Sixth and Fourteenth Amendment right to present a full defense.  Although the Superior Court's treatment of Bonnett is deeply troubling, based on the record before this Court, there was no unreasonable application of federal law by the Massachusetts Supreme Judicial Court.

Though "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)), a "defendant's right to

present relevant evidence is subject to reasonable restrictions ... to accommodate other legitimate interests in the criminal trial process." United States v. Scheffer, 523 U.S. 303, 308 (1998) (citations and internal quotation marks omitted). The First Circuit has explained that reasonable restrictions include the state's "legitimate interest in ensuring that reliable evidence is presented." DiBenedetto v. Hall, 272 F.3d 1, 8 (1st Cir. 2001) (quoting Scheffer, 523 U.S. at 308). "We have found the exclusion of relevant evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." United States v. Catalan-Roman, 585 F.3d 453, 466 n.14 (1st Cir. 2009) (quoting Scheffer, 523 U.S. at 308).

Federal and state governments have broad latitude to "establish rules excluding evidence from criminal trials." Strickland v. Goguen, No. 16-CV-11364-ADB, 2019 WL 4675031, at *7 (D. Mass. Sept. 25, 2019) (Burroughs, J.), aff'd, 3 F.4th 45 (1st Cir. 2021) (quoting Scheffer, 523 U.S. at 308). Such rules do "not abridge an accused's right to present a defense" so long as the rules are "not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Id. (quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)). The exclusion of evidence is "unconstitutionally arbitrary or disproportionate ... where it has infringed upon a weighty interest of the accused." Id.

Within the First Circuit, state evidentiary decisions will be determined to violate a petitioner's constitutional rights only in "egregious situations." Dibenedetto, 272 F.3d at 8 (citing Fortini v. Murphy, 257 F.3d 39, 46 (1st Cir. 2001)).

Here, Bonnett requested a new trial in the Superior Court based on newly discovered evidence. The Superior Court denied Bonnett's motion, finding the testimony by the three witnesses "contradictory, insincere, and not credible, ultimately concluding that the evidence did not carry support for the defendant's position that Payne had shot the victim." Bonnett II, 482 Mass. at 846. "Motions for a new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses in considering such a motion." United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001) (quoting United States v. Indelicato, 611 F.2d 376, 387 (1st Cir. 1979)); see also Commonwealth v. Grace, 397 Mass. 303, 305-6 (1986). Therefore, the SJC's deference to the Superior Court findings was appropriate.

The Superior Court refused to give credence to the Bizzell evidence, as though it was "newly discovered." It was not. It more appropriately ought have been classified as "incorrectly excluded." Bizzell's testimony should have been heard in Bonnett's original trial, and it is quite possible it would have

changed the outcome of that trial.  See Bonnett I, 472 Mass. at 849.  Had the Superior Court recognized the Bizzell Report as "incorrectly excluded," instead of "newly discovered," Bizzell's testimony would have been evaluated for effect on the original trial jury's decision, not on the basis of credibility. Despite this legal error, however, this Court must respect the Superior Court's factual findings.  In light of these findings, there has been no unreasonable application of federal law by the Massachusetts courts.  White, 572 U.S. at 419.

## II.  CONCLUSION

Based on the facts and circumstances of this case, the Court **DENIES** Bonnett's Habeas petition, ECF No. 2.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[3]

---

[3] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.